UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LORA ROSS,

        Plaintiff,

v

BOAT HOLDINGS, LLC d/b/a
BENNINGTON MARINE, and POLARIS
INC.,

        Defendants.

Case No. 1:26-cv-984

Honorable:

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

Anne W. Mabbitt (P71508)
MABBITT BHIMANI LAW
Attorneys for Plaintiff
2851 Charlevoix Drive SE, Suite 301
Grand Rapids, MI 49546
616-290-1200
616-290-1400 (Fax)
amabbitt@mabbittlaw.com
amanda@mabbittlaw.com – assistant

## COMPLAINT

NOW COMES Plaintiff, Lora Ross, by her attorneys, MABBITT BHIMANI LAW, and for her Complaint, states:

JURISDICTIONAL ALLEGATIONS

1.    For all times relevant, Plaintiff Lora Ross was a citizen of the State of Michigan and resided in Kalamazoo County, Michigan.

2.    Defendant, Boat Holdings, LLC, d/b/a Bennington Marine ("Boat Holdings") is a foreign corporation organized and existing, upon information and belief, pursuant to the laws of the State of Indiana. Boat Holdings purports to offer a lineup of pontoon boats through its Bennington Marine brand.

3.    Defendant, Polaris Inc. ("Polaris") is a foreign corporation organized and existing, upon information and belief, pursuant to the laws of the State of Indiana.

1

4.     In or about 2018, Defendant Polaris acquired Boat Holdings including the Bennington Marine brand which included, upon information and belief, Boat Holdings' liabilities. Therefore, Defendant Boat Holdings and Defendant Polaris will be collectively referred to as "Defendant."

5.     The amount in controversy exceeds $25,000 and this matter is otherwise within the jurisdiction this Court.

## ANSWER TO COMMON ALLEGATIONS

6.     Plaintiff incorporates by reference paragraphs 1-5 above as if set forth fully herein.

7.     Defendant is the manufacturer of a 2001 watercraft, referred to as a "Pontoon Boat"; hull # ETW05769L900, which was sold under the Bennington name ("subject boat").

8.     The subject boat includes a defective railing/swinging gate design: The outer rail and attached swinging gate, which passengers are intended to and do use to enter and exit the deck of the boat, contains symmetric convex portions on either side of the gate, creating a downward sloping, gradually narrowing area in which fingers can be and are easily entrapped (hereinafter "entrapment defect"). The downward slope of the railing near the downward slope of the gate also facilitates or "funnels" the movement of the hand into this pinch-point, resulting in a significant risk for avulsion-type finger amputation, typically involving the fifth digit, as would-be swimmers jump from the boat into the water.

9.     Since the introduction of this and similar designs by Defendant and other pontoon boat manufacturers, and for many years prior to the incident involving Plaintiff, have been repeatedly placed on notice and sued concerning the entrapment defect.

10.    Pontoon boat manufacturers, including Defendant, have long recognized the hazard posed by the entrapment defect and have issued multiple recalls. Defendant issued a recall in 2002 acknowledging the danger created by the entrapment defect.

11.    On July 4, 2023, Plaintiff was aboard the subject boat, which was on a navigable waterway located in the territorial waters of the State of Michigan.

12.    As Plaintiff lowered herself from the boat, she stabilized her body on the railing and swinging gate and attempted to descend into the water. The fifth digit of her left hand was caught in the entrapment defect, amputating and degloving the digit and causing significant damage to the bones, tendons and nerves, necessitating surgical amputation.

## <u>COUNT ONE</u>

13.    Plaintiff incorporates by reference paragraphs 1-12 above as if set forth fully herein.

14.    Defendant owed Plaintiff a duty to act reasonable in connection with the design and manufacture of the subject boat which included, without limitation, designing the railing and hinged door and related intersecting points such that there was no entrapment defect. Among other things, the entrapment defect and risk of finger injury was well known in the industry dating back to and before the time of the subject boat's manufacture.

15.    In addition or in the alternative foregoing, Defendant owed a duty to Plaintiff to exercise reasonable care in the marketing, sale, placement of warnings, inspection and installation of reasonable safety devices and/or to warn of any defects or other dangers which might cause injuries before placing the subject boat into the stream of commerce.

16.    Defendant breached the above and other duties to Plaintiff and were otherwise negligent by, and among other things:

a.  designing the subject watercraft in such a way to cause the entrapment defect and/or failing to design the subject boat it in such a way that the entrapment defect did not exist;

b.  failing to install adequate safety guards and/or devices at the entrapment defect point so to eliminate it;

c.  failing to properly inspect, test and market the handrail and gates, specifically the pinch points, and provide proper safety guard devices before placing the subject boat into the stream of commerce;

d.  failing to assure, after the subject boat had been placed into the stream of commerce, that remedial safety devices were installed and/or the subject boat was recalled for the installation of proper safety guard devices;

e.  failing to provide proper instructions and/or warning regarding the foreseeable dangers associated with the entrapment defect or to

    otherwise warn Plaintiff of the hazards inherent in using the handrails and gates while attempting to descend into the water;

f.  failing to equip the subject watercraft with "wedge guards" which were well known to the industry prior to the subject boat as a method to eliminate or substantially lessen the entrapment defect and consequent risk of injury;

g.  failing, after placing the subject watercraft into the stream of commerce and becoming aware of the entrapment defect, to recall the subject boat or assuring an authorized dealer did so, so that the subject boat could be fitted with adequate guards so to eliminate the entrapment defect;

h.  failing to otherwise act as a reasonably prudent designer and manufacturer would under the same or similar circumstances.

17.     The acts and/or omissions stated herein violate and otherwise breach the General Maritime Laws of the United States including, without limitation, The Jones Act, 46 U.S.C. §30104 et seq. entitling Plaintiff to all damages traditionally recoverable thereunder, including punitive damages.

18.     As a direct, proximate and foreseeable result of Defendant's negligent acts or omissions, as recited above, Plaintiff sustained those injuries, as stated herein, and has otherwise suffered damages, including, without limitation:

    a.   past and future medical expenses;

    b.   permanent scarring and disfigurement and loss of use resulting from the amputation of the fifth digit of the right hand;

    c.   past and future pain and suffering;

    d.   past and future mental anguish and emotional distress;

    e.   any and all economic and non-economic damages allowed under Michigan law and/or the General Maritime Laws of the United States including, without limitation, The Jones Act, 46 U.S.C. §30104 et seq.

19.     In addition or in the alternative foregoing, Defendant acted in a grossly negligent manner and otherwise in reckless and wanton disregard of the likelihood the subject boat contained the entrapment defect which posed a foreseeable danger to users, disregarded prior instances of traumatic finger injuries, failed to institute "remedial" measures to eliminate the entrapment defect and otherwise acted in callous disregard of the substantial probability that injury was likely to occur to Plaintiff or others similarly situated supporting the assessment of punitive damages of at least $5 million.

## COUNT TWO

20.    Plaintiff incorporates by reference paragraphs 1-19 above as if set forth fully herein.

21.    Defendant designed and/or manufactured the subject boat.

22.    The subject boat was defective and/or created an unreasonably dangerous condition and risk of injury as recited above.

23.    As a direct, proximate and foreseeable result of the defects in the subject boat and/or the unreasonably dangerous conditions that were present on it, Plaintiff suffered those injuries stated herein.

24.    The acts and/or omissions stated herein violate and otherwise breach the General Maritime Laws of the United States including, without limitation, The Jones Act, 46 U.S.C. §30104 et seq. entitling Plaintiff to all-damages traditionally recoverable thereunder, including punitive damages.

## COUNT THREE

25.    Plaintiff incorporates by reference paragraphs 1-24 above as if set forth fully herein.

26.    Defendant is a "seller" within the meaning of MCL Section 440.2103(1)(d).

27.    The subject boat is a "good" within the meaning of MCL Section 440.2105(1).

28.    Defendant expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples and models that the subject boat was fit for the ordinary purpose for which it was sold and intended to be used.

6

29.     Defendant's express warranties were part of the basis for of the bargain between it and the buyer and ultimately the end user, including Plaintiff.

30.     Defendant breached the express warranties because the subject boat was not fit for the ordinary purposes for which such goods are used.

31.     As a direct, proximate and foreseeable result of Defendant's breach of expressed warranty, Plaintiff suffered those damages stated herein.

32.     The acts and/or omissions stated herein violate and otherwise breach the General Maritime Laws of the United States including, without limitation, The Jones Act, 46 U.S.C. §30104 et seq. entitling Plaintiff to all damages traditionally recoverable thereunder, including punitive damages.

## COUNT FOUR

33.     Plaintiff incorporates by reference paragraphs 1-32 above as if set forth fully herein.

34.     The subject boat is a "good" within the meaning of MCL 440.2105(1).

35.     Defendant is a "merchant" within the meaning of MCL 440.2104(1).

36.     Defendant impliedly warranted that the subject boat was merchantable and was part of the basis of the bargain of the original sale.

37.     Defendant breached the implied warranty of merchant ability because the subject boat was not fit for the ordinary purposes for which such goods are sold for, without limitation, those reasons stated herein.

38.     As a direct, proximate and foreseeable result of the defects in the subject boat and/or the unreasonably dangerous conditions that were present on it, Plaintiff suffered those injuries stated herein.

7

39.     The acts and/or omissions stated herein violate and otherwise breach the General Maritime Laws of the United States including, without limitation, The Jones Act, 46 U.S.C. §30104 et seq. entitling Plaintiff to all damages traditionally recoverable thereunder, including punitive damages.

## COUNT FIVE

40.     Plaintiff incorporates by reference paragraphs 1-39 above as if set forth fully herein.

41.     Defendant knew or reasonably should have known that the subject boat was defective prior to the product being placed into the stream of commerce. Alternatively, Defendant came into knowledge of the defects and dangers posed by the foreseeable use of the subject boat after the product was placed into the stream of commerce, yet Defendant did nothing to warn Plaintiff or others similarly situated of the known dangers.

42.     In addition or in the alternative foregoing, Defendant failed to recall the subject watercraft and/or otherwise retrofit the subject-watercraft with reasonable safety devices to eliminate the entrapment defect.

43.     The placement of the subject boat into the stream of commerce was a "consumer transaction" and, therefore, subject to the protection of the Michigan Consumer Protection Act, which covers Plaintiff.

44.     Defendant concealed and/or failed to warn the public, including Plaintiff, that the subject watercraft was defective.

45.     Such concealment and/or failure to inform constitutes an unfair, unconscionable or deceptive act or practice within the meaning of the Michigan Consumer Protection Act, MCL Section 445.901 et sec.

46.     As a direct, proximate and foreseeable result of Defendants' concealment and/or failure to inform and otherwise there was breach stated herein, Plaintiff suffered those damages and injuries stated herein.

WHEREFORE, Polaris requests that this honorable Court enter an order dismissing the Complaint in its entirety with prejudice, awarding Polaris its costs, including reasonable attorneys' fees, and granting any other relief that this Court deems appropriate.

Respectfully submitted,

MABBITT BHIMANI LAW
Attorneys for Plaintiff

Date: March 25, 2026                    By:   /s/ Anne W. Mabbitt
                                               Anne W. Mabbitt (P71508)

                                        BUSINESS ADDRESS AND TELEPHONE NO.:
                                            2851 Charlevoix Drive, SE, Suite 301
                                            Grand Rapids, MI 49546
                                            (616) 290-1200

9